IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MIKEL WILLIAMS,

     Plaintiff,

v.

COYOTE LOGISTICS, LLC,

     Defendant.

CIVIL ACTION FILE NO.

1:23-cv-2201-SDG-JKL

## FINAL REPORT AND RECOMMENDATION

This employment discrimination and retaliation case, brought under the Americans with Disabilities Act of 1990 ("ADA"), is before the Court on Defendant's Motion to Dismiss and Compel Arbitration. [Doc. 7.] For the reasons that follow, it is **RECOMMENDED** that Defendant's motion be **GRANTED**.

## I.  BACKGROUND[1]

Plaintiff Mikel Williams worked for Defendant Coyote Logistics, LLC as an inbound dispatcher from September 1, 2021 to September 26, 2022. [Doc. 1 ¶ 12.] In May 2022, Williams experienced complications from COVID-19 that resulted

---

[1] The following summary of facts is based on Plaintiff's allegations in the complaint, which for present purposes, the Court assumes to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

in a pulmonary embolism and required him to take time off from work. [*Id.* ¶ 13-14.] Upon his return to work, he requested temporary accommodations in the form of intermittent leave and temporary remote work. [*Id.* ¶ 15.] Defendant denied his request for accommodations. [*Id.* ¶ 17.] Plaintiff complained that the denial was unlawful and notified Defendant that he intended to file a charge with the Equal Employment Opportunity Commission ("EEOC"). [*Id.* ¶ 19.] Plaintiff then took short-term disability leave, during which Defendant terminated his employment. [*Id.* ¶ 20.]

On May 16, 2023, Plaintiff filed his complaint with the following claims: (1) failure to accommodate under the ADA; (2) discrimination under the ADA; (3) ADA interference; and (4) ADA retaliation. [*See* Doc. 1.] Defendant has now moved to dismiss the complaint and compel arbitration based on an arbitration agreement signed at the outset of Plaintiff's employment. [Doc. 7.] Plaintiff has responded in opposition [Doc. 9], and Defendant has replied [Doc. 10]. The motion is now ripe for resolution.

## II.   ARBITRATION AGREEMENT

Defendant attaches to its motion the arbitration agreement (the "Agreement"),[2] which states in relevant part the following:

> [T]he Company has adopted this Arbitration of Disputes Program (this "Program" or "Agreement"). This Program is a binding contract between the Company and you. Acceptance of employment or continuation of employment with the Company is deemed to be acceptance of this Program.
>
> . . . .
>
> Any legal disputes, claims or controversies ("Claims") an employee may have against the Company or the Company may have against an employee, except for those excluded claims or disputes listed below, must be submitted to and resolved by arbitration instead of the courts, whether or not such Claims arise out of an employee's employment or his/her termination.
>
> . . . .
>
> This arbitration Program includes, but is not limited to, claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Family

---

[2] The Court ordinarily must convert a motion to dismiss to a motion for summary judgment if it considers materials outside of a complaint. Fed. R. Civ. P. 12(d); *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005). The Court, however, is permitted to "consider evidence beyond the allegations of the complaint" when analyzing a motion to compel arbitration. *See Mullinax v. United Mktg. Grp., LLC*, No. 1:10-CV-03585-JEC, 2011 WL 4085933, at *8 (N.D. Ga. Sept. 13, 2011). Further, Plaintiff does not challenge the authenticity of the attached agreement. Instead, as discussed below, Plaintiff disputes the enforceability of the Agreement based on a cost-splitting provision.

Medical Leave Act, the Fair Labor Standards Act and all comparable federal and state laws . . .

. . . .

Claims shall be resolved through binding arbitration to be administered by the American Arbitration Association ("AAA"), in accordance with its Employment Arbitration Rules and Mediation Procedures ("AAA Rules") then in effect, except as otherwise modified herein . . . .

[Doc. 7-3.]   Importantly, the Agreement contains the following cost-splitting provision:

Any employee who files a Claim with the AAA must pay one-half of the case-filing fee charged by AAA, or the equivalent of the filing fee charged by the federal district court in the district where the arbitration will be held, whichever is less. The employee will not have to pay any case-filing fees if doing so would render this Agreement unenforceable under applicable law, or if the employee can demonstrate to the arbitrator the inability to pay. California employees are not required to pay any case filing fees. The parties shall share equally the costs of the arbitration, including the arbitrator's fees, unless requiring such sharing of costs would render this Agreement unenforceable under applicable law or the employee demonstrates to the arbitrator an inability to pay.

[*Id.* at 6.]  The Agreement goes on to state, "Notwithstanding anything in the AAA Rules, the Arbitrator will not have the authority to determine whether this Agreement or any portion of it is enforceable, revocable or valid."  [*Id.*]

Defendant asserts that Plaintiff signed the Agreement on September 8, 2021 as part of his new hire paperwork, which is reflected by an e-signature on the last

4

page of the Agreement.  [Doc. 7-1 at 3; Doc. 7-3 at 8.]  Plaintiff asserts that he has no recollection of signing the Agreement.  [Doc. 9 at 1.]

### III.   MOTION TO DISMISS AND COMPEL ARBITRATION

Defendant asserts that the parties entered into a mandatory and binding arbitration agreement and, thus, the Court must compel arbitration and dismiss the complaint for lack of jurisdiction.  [Doc. 7-1.]  Defendant also argues that the arbitrator should determine if the Agreement is enforceable.  [*Id.* at 7-8.]

Plaintiff argues that the Court must decide whether the Agreement is enforceable, per common law and the Agreement's language.  [Doc. 9 at 4-6.] Next, he asserts that the Agreement is unenforceable because its cost-splitting provision makes it prohibitively costly for him to litigate his claims, thus precluding him from effectively vindicating his statutory cause in the arbitral forum.  [*Id.* at 6-11.]

Defendant replies that Plaintiff cannot demonstrate that the Agreement will preclude him from effectively vindicating his statutory rights.  [Doc. 10 at 2.] Defendant asserts that, once in arbitration, the arbitrator will determine whether and/or how to enforce the cost-splitting provision, noting that the Agreement explicitly provides contingencies under which Plaintiff can avoid the costs of

arbitration, including if he can demonstrate to the arbitrator the inability to pay. [*Id.* at 2, 8-9.]

## IV.   DISCUSSION

The Federal Arbitration Act ("FAA") was enacted "to place arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010) (internal citations omitted).  Section 2 of the FAA—the "primary substantive provision of the Act"—provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity to the revocation of any contract.

*Rent-A-Center, W., Inc.*, 561 U.S. at 67 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) and 9 U.S.C. § 2)).  Section 2 reflects "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone*, 460 U.S. at 24.  Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25.

6

A party who is "aggrieved" by the failure of another party to abide by an arbitration agreement may move "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id*. Where all the issues raised must be submitted to arbitration, dismissal, rather than a stay, is appropriate. *Carr v. YRC Yellow Corp.*, No. 1:22-cv-03121-MLB-LTW, 2023 WL 4156666, at *4 (N.D. Ga. Mar. 20, 2023), *report and recommendation adopted sub nom. Carr v. Cameron*, 2023 WL 4156673 (N.D. Ga. May 24, 2023).

As relevant to this case, "the parties may agree to arbitrate gateway questions of arbitrability including the enforceability, scope, applicability, and interpretation of the arbitration agreement." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (quoting *Rent-A-Center*, 561 U.S. at 68-69). Thus, "the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *Id.* (alteration in original) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

In contrast, the threshold issue of whether an agreement to arbitrate has been made is a matter for the Court to determine. *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017). "The Supreme Court has made clear that this inquiry is a matter of state contract law." *Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 (11th Cir. 2017). "If, under a summary judgment-like standard, the district court concludes that there is no genuine dispute as to any material fact concerning the formation of such an agreement, it may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Burch*, 861 F.3d at 1346 (alteration in original) (quotation omitted). "A dispute is not genuine if it is unsupported by the evidence or is created by evidence that is merely colorable or not significantly probative." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (quoting *Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014)) (internal quotation marks omitted). Likewise, "conclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment." *Id*. (quotation omitted).

A party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive "bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000); *see also Graulau v. Credit One Bank, N.A.*, 855 F. App'x

540, 542 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 490 (2021) ("Plaintiff's mere conclusory assertion that she lacks the financial resources to pay for arbitration is not enough to invalidate the arbitration agreement.").

### A. Threshold Issues

As an initial matter, the Court takes up two threshold issues. First, the Court considers whether it is appropriate to decide whether the parties agreed to arbitrate in the first place. The undersigned concludes that it is. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010) (explaining that it is "well settled" that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). Second, the Court considers whether it is appropriate for the Court to analyze the enforceability of the Agreement. The undersigned concludes that it is because the Agreement specifically states that the "Arbitrator will not have the authority to determine whether this Agreement or any portion of it is enforceable, revocable or valid."

9

**B. Analysis**

Having dealt with these threshold matters, the Court now considers the underlying issues: (1) whether the parties agreed to submit these claims to arbitration, and (2) whether the Agreement is enforceable given its inclusion of a fee-splitting provision.

First, it is clear that the parties agreed to submit this kind of dispute to arbitration.  All of Plaintiff's claims arise under the ADA, which are claims specifically listed as covered by the Agreement.  [*See* Doc. 7-3 at 3.]  And there is no genuine dispute as to any material fact concerning the formation of the Agreement.  Plaintiff notes he does not remember signing the Agreement but fails to explain the implications of that assertion or provide any substantive argument on this point.  To the extent he asserts there was no mutual assent in the Agreement as required by Georgia law,[3] such an assertion is merely conclusory and not probative.  *See Bazemore*, 827 F.3d at 1333.  Further, under Georgia law, a party opposing enforcement of an agreement does not create a genuine issue of fact

---

[3] Under Georgia law, to "constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1.

concerning formation when he merely fails to recall signing the agreement. *See Reddick v. Hewlett-Packard Co.*, No. 1:20-CV-04597-LMM-RDC, 2021 WL 5034836, at *7 (N.D. Ga. May 20, 2021), *report and recommendation adopted*, 2021 WL 5033811 (N.D. Ga. June 8, 2021) ("[A]bsent a firm evidentiary root, Plaintiff's failure to recall alone cannot plausibly sustain a contrary inference *against* agreement.").

Second, the undersigned concludes that the fee-splitting provision has not rendered the Agreement unenforceable. Plaintiff has not carried his burden of showing the likelihood of incurring prohibitively expensive costs if the Agreement is enforced. *See Green Tree Fin. Corp.-Alabama*, 531 U.S. at 91-93. Plaintiff argues that the fee-splitting provision makes it a certainty that he "will pay a portion of the arbitration costs regardless of the outcome of the litigation." [Doc. 9 at 8.] But that argument ignores the text of the Agreement, which provides that the "parties shall share equally the costs of the arbitration, including the arbitrator's fees, *unless requiring such a sharing of costs would render this Agreement unenforceable . . . or the employee demonstrates to the arbitrator an inability to pay*." [*See* Doc. 7-3 at 6 (emphasis added).] Therefore, as Plaintiff has asserted to the Court that he would be unable to pay half of the arbitrator's fees [Doc. 9 at 10], so can he make such an assertion to an arbitrator. And Plaintiff will not have to

pay if he can make such a demonstration, as provided in the Agreement.  Simply put, the risk that Plaintiff "will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement."  *See Green Tree Fin. Corp.-Alabama*, 531 U.S. at 91.  Accordingly, because all the claims that Plaintiff brings must be submitted to arbitration, dismissal is appropriate.  *See Carr*, 2023 WL 4156666, at *4.

## V.    CONCLUSION

For the aforementioned reasons, it is **RECOMMENDED** that Defendant's Motion to Dismiss and Compel Arbitration [Doc. 7] be **GRANTED** and that Plaintiff's complaint be **DISMISSED**.    As this is a final Report and Recommendation, the Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

IT IS SO RECOMMENDED this 29th day of September, 2023.

_____
JOHN K. LARKINS III
United States Magistrate Judge

12